BERENICE GRIFFIN, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. UNIVERSAL CASUALTY COMPANY, Defendant-Appellee.

First District (6th Division)    No. 1—94—0654

Opinion filed August 25, 1995.

Timothy Huizenga, Maureen Terjak, and James O. Latturner, all of Legal Assistance Foundation of Chicago, of Chicago, for appellants.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

In April 1992 the named plaintiff, Berenice Griffin, bought an automobile insurance policy from the defendant, Universal Casualty Company, through Lincoln Insurance Agency (Lincoln). On October 5, 1992, her car was severely damaged in an accident, and the defendant declared it a total loss. In settlement of her claim, the defendant offered the plaintiff a replacement vehicle or an amount equal to the cost of a replacement vehicle. The plaintiff refused these offers and filed a class action complaint. With leave of court, the plaintiff filed a four-count amended complaint.

Pursuant to the defendant's motions, the judge dismissed all four

counts of the amended complaint. The plaintiff appeals the dismissal of the first three counts of her amended complaint but not the dismissal of the fourth count. The judge did not address the propriety of the plaintiff's complaint as a class action complaint, and this also is not an issue on appeal.

In the first count of her amended complaint, the plaintiff alleged that the defendant was guilty of unfair and deceptive practices in violation of the Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 *et seq.* (West 1992)) (Consumer Fraud Act). Specifically, she claimed that the defendant charged her and the other class members[1] for more insurance than it provided under the policy, sold an actual cash value policy "under the label or designation of a stated value insurance policy," concealed the policy provisions under which it had the option to offer her a replacement vehicle or the cost thereof and concealed the fact that it settles 95% of its claims this way. In support of these claims, the plaintiff alleged the following facts.

On or about April 16, 1992, the plaintiff purchased a Universal insurance policy to insure her 1984 Chevrolet automobile. As an exhibit to her amended complaint, she attached this policy, which is identified as a "stated value policy" and which has an initial declarations page followed by eight printed pages.

The declarations page lists Lincoln Insurance Agency as the "Producer" of the policy, lists the "value" of the plaintiff's car at $2,150 and lists the deductible as $250. Directly underneath the blank on the declarations page where the value of the car is typed, there is the following printed sentence: "The stated value described above for each vehicle is subject to reduction as set forth in Part V, physical damage[,] of the policy provisions." Part V appears on page five of the policy and contains information under several bold subheadings, including "Total Loss" and "Depreciation."

Under the "Total Loss" heading, the policy provides in relevant part:

"In the event of a loss *** wherein the physical damages sustained or the destruction to the owned automobile approximates the stated value of the owned automobile as listed on the Declaration Page *minus* a deduction for depreciation as hereinafter set forth and *minus* the deductible amount and *minus* a deduction for the cost to replace missing equipment and/or repair any old, unrepaired physical damage that occurred after the incep-

[1]The plaintiff alleged that the number and identity of the class members is unknown to her but "can easily be determined from the records of the Defendant."

tion of the policy, and prior to the subject loss to the owned automobile, the Company shall have the following options: (1) Prepayment to the Insured of the stated value of the owned automobile as listed on the Declaration Page *minus* a deduction for depreciation as hereinafter set forth *minus* the deductible amount and *minus* a deduction for the cost to replace missing equipment and/or repair any old, unrepaired physical damage that occurred after the inception of the policy and prior to the subject loss to the owned automobile; or (2) Replacement of the owned automobile with other like kind and quality as of the date of the subject loss, taking into consideration depreciation and *minus* any deductible amount and minus any missing equipment and/or old, unrepaired physical damage which occurred after inception of the policy and prior to the subject loss; or (3) Payment of the amount the Company would have paid for a replacement vehicle under Option (2); or (4) Repair or rebuild the owned automobile." (Emphasis in original.)

Under the "Depreciation" heading, the policy provides:

"Depreciation shall be computed at the rate of 2% per month of the stated value of the owned automobile as listed on the Declaration Page for every month or part thereof that the policy shall have been in force. The total percentage deduction for depreciation shall be computed on the whole amount in one sum and not by monthly deductions."

The plaintiff further alleged that, on October 5, 1992, her car was damaged in an accident, and, because of the extent of the damage, the defendant declared her car a total loss in November 1992. If the defendant had decided to settle her claim using option (1) of the "Total Loss" section of the policy, it would have owed her $1,642: the stated value ($2,150) minus $258 for depreciation (2% x six months x $2,150) minus the $250 deductible. Instead, the defendant offered her a replacement car valued at $1,050. After the plaintiff refused the replacement car, the defendant offered her $1,050 in cash "pursuant to technical terms contained in fine print on page five of the policy, under which [the defendant] had the option of offering [the plaintiff] a replacement car or the value of the replacement car." The plaintiff also did not accept this offer, and, instead, filed a complaint against the defendant.

In addition, she alleged:

"S. At the time [the plaintiff] purchased the [stated value] policy, her automobile was not worth $2,150.00, which was the stated value on the policy.

T. At the time [the plaintiff] purchased the [stated value] policy, her automobile was worth not more than $1,550.00.

U. [The defendant] knew, or should have known, that the actual value of [the plaintiff's] eight[-]year[-]old Chevrolet automobile was not more than $1,550, considerably less than $2150.00 at the time the [stated value] policy was purchased.

V. At the time [the plaintiff] purchased the [stated value] policy, the maximum liability of [the defendant] for a total loss was not more than $1,550, the maximum value of a replacement vehicle, not the $2,150.00 stated value.

W. [The defendant] charged [the plaintiff] for at least $600.00 of insurance that was not provided.

X. [The defendant] pays over 95% of claims for a total loss under a stated value policy by either a replacement vehicle or the value of the replacement vehicle.

Y. In all of these claims the replacement vehicle or value thereof is used because it is less than the stated value under a [stated value] policy with a depreciation schedule.

Z. [The defendant] bases or calculates the [insured's] premium charge on the stated value set forth in the policy."

In count II of her amended complaint, the plaintiff alleged alternatively that the defendant violated the Consumer Fraud Act by failing to pay the amount due under the policy in the event of a total loss. In support of this claim, she alleged:

"14. [The defendant] is experienced and has significant expertise in the valuation of used automobiles and in determining their projected depreciation.

15. [The defendant] used its experience and expertise in valuing the automobile of [the plaintiff] and all the class members and in setting the depreciation schedule."

Using the formula in option (1) of the "Total Loss" section (stated value minus depreciation minus the deductible), she explained that she was entitled to $1,642 under the policy, yet the defendant offered her a car valued at only $1,050. She, therefore, claimed that the defendant breached option (2), which requires it to offer the insured a replacement vehicle of "like kind and quality": "[t]he replacement vehicle offered [the plaintiff] was of a lesser 'quality' than [her] automobile as reflected in its significantly lower value."

Count III of the amended complaint is a breach of contract claim in which the plaintiff merely realleged the allegations of count II. Count IV is based on the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1992)).

On November 11, 1993, the defendant filed (1) a motion to dismiss count IV under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)); (2) a motion to strike and dismiss the class allegations of counts I and II; and (3) a motion to dismiss

counts I, II and III under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)).

The defendant's motion to dismiss the first three counts of the plaintiff's amended complaint contains a section entitled "Facts supplied by affidavit pursuant to § 2—619 of the Code of Civil Procedure." In a certification attached to the motion to dismiss, George Fuchs, the vice-president of the defendant, certified under section 1—109 of the Illinois Code of Civil Procedure (735 ILCS 5/1—109 (West 1992)) that the facts he alleged "are true and correct, except as to matters therein stated to be on information and belief, and as to such matters he certifies as aforesaid that he verily believes the same to be true." Because there was no statement in the certified section that any of the facts were on information and belief, we conclude that Fuchs certified that all of the facts alleged were true and correct.

The certified section contains "[t]he following facts in addition to the complaint allegations, but not in contravention thereof":[2]

"The amount of the physical damage coverage was in accordance with the submission in the application for insurance presented by [the plaintiff's] insurance broker, Lincoln Insurance Agency, Inc., (see Exhibit A) *** [The defendant] at no time directly or indirectly suggested or directed what the amount of coverage was that the Plaintiff should purchase. In fact, through the issuance of the policy, all communications in the application and negotiation of the policy were between [the defendant] and Lincoln. [The defendant] had no communications with [the plaintiff] of any kind. This is the same method in which all Universal policies are issued."

The plaintiff's application for the Universal policy, which the defendant attached to its motion to dismiss as exhibit A, indicates that Lincoln was the "Producer," that the plaintiff's car was a 1984 four-door Chevrolet Celebrity and that the "actual cost" of this car was $2,150.

Fuchs further certified that, in accordance with section 143 of the Illinois Insurance Code (215 ILCS 5/143 (West 1992)), the defendant filed the stated value policy provisions with the Director of Insurance, who approved the policy for issuance effective April 1, 1992. In addition, pursuant to section 488.1 of the Insurance Code (215 ILCS 5/488.1 (West 1992)), the defendant filed its underwriting rules and premium rate manual with the Director of Insurance, who never "disapproved the rate manual as excessive or unfairly discriminatory

---

[2]The amended complaint was not certified or supported by affidavit, nor were any of the subsequent pleadings other than the portion of the defendant's motion to dismiss certified by Fuchs.

under section [483.2] of the Insurance Code" (215 ILCS 5/483.2 (West 1992)). Each of the four options available to the defendant under the "Total Loss" provision is explicitly contained in the plaintiff's policy and approved by the Director of Insurance.

Fuchs also certified that, pursuant to option (3) of the "Total Loss" section, the defendant advised the plaintiff of the existence of a replacement vehicle available at Wix Auto, a licensed used car dealer. The defendant had made a determination that this replacement vehicle was a "comparable vehicle" in accordance with Illinois Department of Insurance Rule 919.80(c)(1)(A) (50 Ill. Adm. Code § 919.80(c)(1)(A) (1991)).

In certifying that the defendant offered the plaintiff a comparable replacement, Fuchs referred to a description of the replacement vehicle from Wix Auto. This description, which was signed by a representative of Wix Auto, indicates that the plaintiff was offered a 1984 Chevrolet Celebrity, but she refused this car. The description also lists the features and mileage of this replacement car. In addition, the description provides that "[t]he replacement price was $1,050 less the deductible including title and plate transfer fee, municipal tax and tax on deductible. Both mileage and equipment were comparable to the vehicle being replaced." Finally, Fuchs certified that the defendant's offer of $1,050, the price it would pay to purchase a replacement vehicle on the plaintiff's behalf, was strictly in conformity with Part V of the policy.

The plaintiff filed a response to the defendant's motion to dismiss the first three counts of the amended complaint; the defendant filed a reply to this response; and the judge allowed the plaintiff to file a surreply to the defendant's reply. After considering these pleadings, the judge dismissed the plaintiff's amended complaint with prejudice because he decided that "the plaintiff has a duty to read, quote, in full her contract with the defendant and that failure to do so is no basis on which a claim can be made."

We begin our discussion by examining the pleadings presented by both parties and determining which facts we must take as true for purposes of determining whether the judge properly dismissed the plaintiff's cause of action under section 2—619. Section 2—619 of the Illinois Code of Civil Procedure provides in relevant part:

"(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

\* \* \*

(9) That the claim asserted against the defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (735 ILCS 5/2—619(a)(9) (West 1992).)

For purposes of the motion to dismiss, all well-pleaded facts in the complaint and reasonable inferences therefrom are taken as true and the motion should be granted unless these facts fail to state a cause of action. (*McKinnon v. City of Chicago* (1993), 243 Ill. App. 3d 87, 612 N.E.2d 67.) Conclusions of law and conclusions of fact unsupported by specific factual allegations are not taken as true. (*Management Association of Illinois, Inc. v. Board of Regents* (1993), 248 Ill. App. 3d 599, 618 N.E.2d 694.) The standard of review for a dismissal based on a section 2—619 motion is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 619 N.E.2d 732.

■ As section 2—619 states, if the "affirmative matter" the defendant asserts in the motion to dismiss is not apparent on the face of the complaint, the defendant must submit affidavits to support its defense. The affirmative matter presented in the affidavits must be more than just evidence that refutes a well-pleaded fact of the complaint. *Chicago Title & Trust Co. v. Weiss* (1992), 238 Ill. App. 3d 921, 605 N.E.2d 1092.

The defendant supported its motion to dismiss with Fuchs' certification of a portion of that motion. Under section 1—109 of the Code of Civil Procedure, a certified pleading may be used "as though subscribed and sworn to under oath." (735 ILCS 5/1—109 (West 1992).) We judge that Fuchs' certification of a portion of the defendant's motion to dismiss is the equivalent of an affidavit under Illinois Supreme Court Rule 191, which governs affidavits filed under section 2—619 of the Code.

Fuchs certified that the source of the stated value was the plaintiff's insurance application, that the defendant did not suggest this amount of coverage and that it had no contact with the plaintiff during the negotiations of the policy. This information did not merely refute an ultimate fact alleged in the amended complaint. Instead, the plaintiff's allegations that the defendant knew or should have known her car was worth less than the stated value and that it used its expertise and experience to value her car were conclusions of ultimate fact unsupported by any allegations of specific fact.

■ We judge that the certified portion of the motion to dismiss was a sufficient affidavit to support the defendant's section 2—619 motion to dismiss counts I and II. Once the defendant meets its burden of presenting affirmative matter through sufficient affidavits, however, the burden shifts to the plaintiff, and unless the plaintiff then files a counteraffidavit to refute evidentiary facts in the

defendant's supporting affidavit, those facts are deemed admitted. (*Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 116.) Facts in an affidavit that are not contradicted by a counteraffidavit will be taken as true, "notwithstanding *** contrary unsupported allegations in the adverse party's pleadings." (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 507, 396 N.E.2d 34.) The plaintiff in the case before us did not challenge the certified facts in the motion to dismiss with a counteraffidavit. We will, therefore, take as true those *facts* certified by Fuchs, notwithstanding any contrary assertions in the plaintiff's pleading. (See *Chicago Title*, 238 Ill. App. 3d at 925.) We will also take as true those facts of the plaintiff's amended complaint that were not contradicted by Fuchs' affidavit.

Using this framework, we first address the plaintiff's argument that the judge erred in holding that count I of her complaint did not state a cause of action under the Consumer Fraud Act. She argues that the defendant's practice of charging a premium based on an inflated stated value and then settling a claim with a replacement vehicle at less than the stated value is unfair and deceptive. She asserts that her allegation that the defendant overvalues vehicles when setting the premium should be taken as true for purposes of the appeal. She further argues that the defendant's practice of settling claims with a replacement vehicle or the cost thereof is deceptive because these options are hidden on page five of the policy, and the defendant does not disclose to consumers that it uses these options to settle 95% of its total loss claims.

The plaintiff's arguments depend on whether she has established at least factual questions of whether the defendant did fix the stated value and whether the defendant hid the options available to the defendant. If the defendant did not fix the stated value of the car or if the written contract of insurance did not conceal the options, the defendant would be *legally* justified in exercising the option that it did in this case; and the fact that it did exercise that option 95% of the time without disclosing that fact to consumers would not be actionable.

We believe that the judge properly dismissed counts I and II of the plaintiff's amended complaint. We need not address the defenses the defendant asserts based on the Insurance Code because of our conclusion that the plaintiff has failed to allege sufficient facts to show any violation of the Consumer Fraud Act.

The Consumer Fraud Act provides in relevant part:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of

any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

■ To prove a defendant violated the Consumer Fraud Act with a deceptive practice, a plaintiff must prove "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce." (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542, 607 N.E.2d 194. See also *Martin v. Heinhold Commodities, Inc.* (1994), 163 Ill. 2d 33, 643 N.E.2d 734; *Adler v. William Blair & Co.* (1995), 271 Ill. App. 3d 117.) The plaintiff need not show that a defendant intended to deceive but only that it intended the plaintiff to rely on its act or information. (*Breckenridge v. Cambridge Homes, Inc.* (1993), 246 Ill. App. 3d 810, 616 N.E.2d 615.) Even an innocent or negligent misrepresentation, therefore, may be actionable under the Consumer Fraud Act. *Rubin v. Marshall Field & Co.* (1992), 232 Ill. App. 3d 522, 597 N.E.2d 688.

Here, the plaintiff did not allege facts sufficient to show a deceptive act. She alleged no misrepresentation, concealment or omission of a material fact. See *Obenland v. Economy Fire & Casualty Co.* (1992), 234 Ill. App. 3d 99, 599 N.E.2d 999.

■ First, we disagree that her allegation that the defendant overvalued her vehicle must be taken as true for purposes of her appeal. Although the plaintiff alleges in count I that the defendant "knew, or should have known" that her vehicle was not worth $2,150 at the time she purchased the policy, but was only worth $1,550, and she alleges in count II that the defendant "used its experience and expertise in valuing [her car]," we will not take these allegations as true because they are conclusions of fact unsupported by specific factual allegations. (See *Management Association of Illinois*, 248 Ill. App. 3d at 606.) Even if we did consider these factual allegations, we would not take them as true for purposes of evaluating the defendant's motion to dismiss because they are contradicted by the facts Fuchs certified, which the plaintiff did not counter by affidavit. See *Chicago Title*, 238 Ill. App. 3d at 925.

In support of her claim that the defendant overvalued her car by providing the stated value on her application of insurance, the

plaintiff argues that the defendant had the burden of showing that Lincoln was not its agent. We disagree. The plaintiff never pleaded that Lincoln was the agent of the defendant. Without sufficient facts alleged by the plaintiff to show that the defendant overvalued her car indirectly through Lincoln, the defendant had no obligation to show that Lincoln was not its agent. We have already concluded that the plaintiff failed to allege sufficient facts from which we could conclude that the defendant directly provided the stated value for her car. She has also failed to allege sufficient facts from which we could conclude that Lincoln acted as the defendant's agent in providing the stated value.

■ Generally, an insurance "agent" acts as the agent of the insurer (*State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 583 N.E.2d 547), while an insurance "broker" acts as an agent of the insured (*State Security Insurance Co. v. Frank B. Hall & Co.* (1994), 258 Ill. App. 3d 588, 630 N.E.2d 940). Whether a seller of insurance is an agent or a broker depends on the following factors: "who first set the individual in motion, who could control his action, who was to pay him, and whose interest he was there to protect." (*Krause v. Pekin Life Insurance Co.* (1990), 194 Ill. App. 3d 798, 805, 551 N.E.2d 395.) We do not find any evidence in the record that would allow us to conclude that Lincoln was an agent or a broker according to these factors, although the certified portion of the defendant's motion to dismiss, which states that all negotiations for the policy were between Lincoln and the defendant, indicates that Lincoln was acting as an agent for the plaintiff. Despite being alerted to the defendant's claim that it did not directly or indirectly suggest or direct the amount of coverage, the plaintiff did not see fit to amend the complaint to allege that Lincoln was the defendant's agent.

Because the plaintiff has failed to allege facts that show that the defendant directly provided the stated value or indirectly provided it by means of an agency relationship with Lincoln, we judge that the plaintiff's complaint is insufficient to show that the defendant violated the Consumer Fraud Act by overvaluing her car.

The plaintiff does present specific factual allegations that the defendant charged a premium based on a stated value of $2,150, when the plaintiff's car was worth only $1,550, but these facts alone do not show a violation of the Consumer Fraud Act. The defendant's use of the $2,150 as the stated value could not be a misrepresentation, concealment or omission of material fact on which the defendant intended the plaintiff to rely because the defendant did not provide this figure. We find it significant that the application she signed listed the purchase price of the car at $2,150, the stated value in the policy.

The plaintiff relies principally on *Meier v. Aetna Life & Casualty Standard Fire Insurance Co.* (1986), 149 Ill. App. 3d 932, 500 N.E.2d 1096. That case does not support the plaintiff's position. In *Meier*, the plaintiff bought a 1962 Chevrolet for $1,000 and made several repairs on the car. He testified that after he made the repairs it was worth $5,000 because of the repairs and the rarity of the car. After he made the repairs, the plaintiff accepted an offer from the *insurer's agent* to insure his car for $5,000 under a stated value insurance policy. The agent explained that this type of insurance, under which the insurer would insure the actual value of the plaintiff's car, was appropriate because the plaintiff's car was too old to have a "book value." As proof of the value of the car, the agent accepted an appraisal from an appraiser of the plaintiff's choice. Two and one-half years later the insured declared the plaintiff's car a total loss as a result of the accident but offered the plaintiff only $2,000 for his claim. The appellate court affirmed a judgment in favor of the plaintiff.

There are many distinctions between *Meier* and the case before us. In *Meier* the judgment was based on estoppel, which is not present here. Moreover, there was no doubt that an agent of the insurer took an active role in fixing the value of the vehicle. In addition, *Meier* did not refer to the exercise of any particular options that might have been available. Finally, the holding of *Meier* was that an insurer could not deny the accuracy of the stated value because it had a burden to inquire into any implausible or doubtful facts on which it intended to rely and failed to make any such inquiry. (*Meier*, 149 Ill. App. 3d at 939-40.) There are no implausible or doubtful facts that were presented to the defendant in this case that would have triggered an obligation to inquire as to the value.

We find further that the defendant did not hide the options available to the defendant. The defendant's right to choose these options is clearly explained in Part V of the insurance policy's "Total Loss" section. These options are not concealed such that an insured is misled into believing that the defendant will pay her the stated value upon a total loss. Rather, an isolated and obvious printed sentence on the declarations page of the policy, which is the first page of the policy, refers the insured to all of these options. This reference appears directly underneath the stated value of the insured vehicle and explains that the stated value is subject to the provisions of Part V.

The "Total Loss" section of Part V explains that the defendant may choose among four options to settle the insured's claim: (1) it may pay the insured the stated value minus depreciation and the deductible; (2) it may offer a replacement vehicle of like kind and quality subject to reductions for depreciation and the deductible; (3) it

may offer the insured the value of this replacement vehicle; or (4) it may repair the damaged vehicle. All of these options appear right next to each other. There is, therefore, no preferential placement of option (1) such that, as the plaintiff alleges, an insured is misled into believing that the defendant must reimburse her according to the stated value. Contrary to her argument that the policy is deceptive because "the *only* settlement option disclosed on the declarations page is the stated value less the deductible" (emphasis in the original), none of the settlement options appears on the declaration page. Instead, the declarations page merely refers to Part V of the policy, which contains all of the settlement options.

Even if, as the plaintiff alleges, the defendant settles 95% of its claims using option (2) or (3) of the "Total Loss" section, we do not think this allegation establishes a deceptive practice. The defendant's practice is not contrary to the policy provisions, as the plaintiff argues. Rather, the policy expressly gives the defendant the option of settling insureds' claims with a replacement vehicle or with the cost of a replacement vehicle. In this way, the case before us is distinguishable from *Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312, which the plaintiff cites in support of her claim that the defendant violated the Consumer Fraud Act by failing to disclose its practice of settling 95% of its claims through the replacement options. In *Elder*, the court held that the plaintiff had proved a deceptive practice under the Consumer Fraud Act because the defendant sold him an insurance policy without disclosing its policy of denying automobile-theft claims on the basis of polygraph examinations. (*Elder*, 201 Ill. App. 3d at 750-53.) Unlike the *Elder* plaintiff, who did not know that the settlement of his claim might be based on the results of a polygraph examination, the plaintiff here was notified through express policy language that the defendant could choose to settle her claim with a replacement vehicle or the cost of that vehicle.

The case before us is analogous to *Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 468 N.E.2d 1251, in which the court held that there was no violation of the Consumer Fraud Act. In *Robacki*, the plaintiff owned an automobile insurance policy. During the policy period, the defendant insurance company sent the plaintiff two letters and a pamphlet (Replacement Papers), which explained that his coverage had changed. (*Robacki*, 127 Ill. App. 3d at 295.) After the insurer denied his claim under the policy, the plaintiff alleged that the Replacement Papers were deceptive because they led him to believe his coverage had not changed. The court rejected this argument because it reasoned that the Replacement Papers outlined the

new coverage and provided a clear summary of the new provisions. *Robacki*, 127 Ill. App. 3d at 300-01.

■ As in *Robacki*, there was no deception or likelihood of confusion in this case. The declarations page of the policy alerted the plaintiff to the fact that the stated value of her vehicle was subject to limitations and referred her to the policy section containing the defendant's settlement options in the event of a total loss. This section makes clear that the defendant has the right to choose among these four options. See also *Obenland*, 234 Ill. App. 3d at 115 (holding that the plaintiffs had failed to establish a violation of the Consumer Fraud Act because their auto insurance policy clearly and unambiguously described the type and amount of coverage they had purchased).

Moreover, we find it difficult to understand how the plaintiff may argue that the defendant should settle her claim under option (1), yet claim that she did not understand or was unaware of options (2) and (3). The fact that the plaintiff does not claim that the defendant owes her the entire stated value, $2,150, but rather the stated value less depreciation and her deductible, $1,642, indicates that she understood that the stated value was subject to the limitations contained in option (1). We do not see how the limitations in options (2) and (3) are less clear.

Not only does the plaintiff's complaint fail to show that the defendant is guilty of a deceptive practice, she has also failed to sufficiently allege facts showing that the defendant is guilty of an unfair practice. She argues that, by overvaluing her vehicle, the defendant charged her for more insurance than it provided because the value of the replacement vehicle "is almost always less than what would be paid under the [stated value] formula at the time of total loss."

Courts determine whether a practice is "unfair" under the Consumer Fraud Act on a case-by-case basis using the following factors:

> " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 854, 575 N.E.2d 1378, quoting *Federal Trade Comm'n v. Sperry & Hutchinson Co.* (1972), 405 U.S. 233, 244-45 n.5, 31 L. Ed. 2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5.

The allegations of the plaintiff's complaint do not show that the defendant committed an unfair practice. First, the plaintiff failed to show that the defendant acted unfairly by overvaluing her car. The plaintiff alleged insufficient facts to show that the defendant was involved in valuing, much less overvaluing, her car. As previously noted, Fuchs certified that the defendant did not value the plaintiff's car.

Second, the plaintiff did not sufficiently allege that the defendant committed an unfair practice by charging her for insurance it did not provide. Although she correctly argues that overcharging or charging for a good or service not provided is an unfair practice under the Consumer Fraud Act (see, *e.g., Knecht Services*, 216 Ill. App. 3d at 856), that is not what happened in the case before us. The defendant did provide coverage in the amount of the stated value on which it based its premium. If the cost of a replacement vehicle or of repairs to the plaintiff's damaged vehicle had been more than the stated value (due to inflation, for example), the stated value would have been the minimum cost at which they could have settled her claim. Thus, the plaintiff's car was covered for the amount of the stated value even though this is not the amount she received in settlement of her claim. The order dismissing counts I and II is affirmed.[3]

■ We turn now to the plaintiff's claim that the defendant breached the insurance contract by failing to offer her a replacement vehicle of "like kind and quality." Whether the defendant offered her a replacement vehicle of "like-kind and quality" as required by the policy is a question of fact; and we agree that the defendant has failed to establish that it did offer the plaintiff such a vehicle as a matter of law.

The defendant relies on Rule 919.80, promulgated by the Director of Insurance, in support of its claim that the replacement vehicle was of a similar kind and quality as the plaintiff's car. That rule (50 Ill. Adm. Code § 919.80(c)(1)(A) (1991)) provides as follows:

"The company may elect to replace the insured vehicle, providing that it is:

(A) Comparable in that it will be by the same manufacturer, same year, similar body style, and similar options and price range as the insured vehicle and in as good or better overall condition and available for inspection at a licensed dealer within a reasonable distance of the insured's residence."

---

[3]Our holding that counts I and II were properly dismissed should not be construed as a recommendation of the defendant's stated value policy. We are aware of insurance policies which provide that option 1 is available to the insured, not the insurer.

The purchase price of the vehicle was $2,150, strong proof of the fair cash market value at the time the policy was issued. Accepting that figure as the value of the car at the time the policy was issued, it was worth $1,892 at the time of the accident, $2,150 less depreciation. (We do not subtract the deductible of $250.) The replacement car was worth $1,050, or 44% less, not an inconsiderable difference. Even if we subtracted the deductible leaving a value of $1,642, the replacement vehicle would be worth 36% less; also not an inconsiderable difference. The defendant submitted an exhibit prepared by Wix Auto, the used car dealer from which it acquired the replacement car, which shows that the mileage of the replacement car was 59,758. The exhibit, which is a form prepared by Wix Auto, alleges that "[b]oth mileage and equipment were comparable to the vehicle being replaced." We refuse to accept that statement in the exhibit. First, because it is conclusional; second, it is based on insufficient knowledge because Wix Auto never saw the insured vehicle; last, and most important, it is false.[4] In another exhibit which was prepared by a body shop hired by the insurer, the mileage of the insured vehicle is shown as 35,712, more than 24,000 miles less than the replacement vehicle. The replacement vehicle, according to the exhibit, had power steering, power brakes, air-conditioning, an AM/FM radio and a rear defogger. There are other options which the replacement vehicle did not have: power windows, power seats, power door locks, cruise control and a tape deck. There is nothing in the record to show what options the insured car had. There is no showing of what type of transmission, manual or automatic, that either car had. Consequently, we are unable to determine whether the two cars had similar options; the burden was on the defendant to show that they had. In our judgment, the defendant has failed to establish as a matter of law that the replacement vehicle offered to the plaintiff was in the same price range, in as good condition or had similar options as the insured vehicle. For these reasons, we must reverse the order dismissing count III of the amended complaint.

The order dismissing counts I and II of the amended complaint is affirmed; the order dismissing count III is reversed and remanded for further proceedings.

Judgment affirmed in part and reversed and remanded in part.

McNAMARA, P.J., and ZWICK, J., concur.

---

[4]We refuse to accept that part of Fuch's certification which alleged that the defendant offered the plaintiff a comparable vehicle for the same reasons; Fuch's certification was based on the Wix Auto exhibit.