# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Aliano v. Ferriss*, 2013 IL App (1st) 120242

---

| | |
|---|---|
| Appellate Court Caption | MARIO ALIANO, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. TIMOTHY FERRISS and RANDOM HOUSE, a New York Corporation, Defendants-Appellees. |
| District & No. | First District, First Division <br> Docket No. 1-12-0242 |
| Filed | March 29, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order dismissing with prejudice plaintiff's amended complaint alleging violations of the Consumer Fraud Act and the Deceptive Trade Practices Act based on the marketing statements defendant made in connection with a weight loss and exercise book it published was affirmed, since the statements were not false, they could not be construed as misleading and plaintiff failed to sufficiently allege any unfair practices. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-1939; the Hon. Stuart Palmer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Zimmerman Law Offices, P.C., of Chicago (Thomas A. Zimmerman, Jr., and Adam M. Tamburelli, of counsel), for appellant.

Holland & Knight, LLP, of Chicago (Martin G. Durkin, Jr., and Trisha M. Rich, of counsel), for appellees.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Rochford and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1  This appeal arises from a December 21, 2011 order entered by the circuit court of Cook County which dismissed with prejudice the first amended complaint filed by plaintiff-appellant Mario Aliano (Aliano), individually and on behalf of all others similarly situated, against defendants-appellees Timothy Ferriss and Random House, a New York corporation (collectively, Random House). On appeal, Aliano argues that the trial court erred in ruling that he failed to state a cause of action under section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2010)) and section 2 of the Illinois Uniform Deceptive Trade Practices Act (Deceptive Trade Practices Act) (815 ILCS 510/2 (West 2010)). For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                    BACKGROUND

¶ 3  On December 14, 2010, Random House published the book *The 4-Hour Body: An Uncommon Guide to Rapid Fat-Loss, Incredible Sex, and Becoming Superhuman* (the book). The book consists of 13 chapters and 550 pages. Both the book and the Internet website www.fourhourbody.com contain the following marketing statements, which are at issue in this case:

"YOU WILL LEARN (in less than 30 minutes each)

*How to prevent fat gain while bingeing [*sic*] (X-mas, holidays, weekends)

* How to increase fat-loss 300% with a few bags of ice

* How Tim gained 34 pounds of muscle in 28 days, without steroids, and in four hours of total gym time

* How to sleep 2 hours per day and feel fully rested

* How to produce 15-minute female orgasms

* How to triple testosterone and double sperm count

* How to go from running 5 kilometers to 50 kilometers in 12 weeks

* How to reverse 'permanent' injuries

* How to add 150+ pounds to your lifts in 6 months

\* \* \*

Bonus Material

This book isn't just what you hold in your hands. Using passwords hidden in this book you can access some of the most entertaining material that didn't make it in. Here are just a few samples:

Spot Reduction Revisited: Removing Stubborn Thigh Fat

Becoming Brad Pitt: Uses and Abuses of DNA

The China Study: A Well-Intentioned Critique

Heavy Metal: Your Personal Toxin Map

The Top 10 Reasons Why BMI Is Bogus

Hyperclocking [*sic*] and Related Mischief: How to Increase Strength 10% in One Workout

Creativity on Demand: The Promises and Dangers of Smart Drugs

An Alternative to Dieting: The Bodyfat [*sic*] Set Point and Tricking the Hypothalamus

For this and much more, visit the free message boards (where I also post answers and suggestions) at www.fourhourbody.com."

¶ 4    According to Aliano, he purchased the book[1] in reliance on the marketing statements regarding the availability of the "bonus material." On January 14, 2011, Aliano filed a class action complaint against Random House in the circuit court of Cook County. After Aliano filed his complaint, Random House made the bonus material available to the public free of charge on the website www.fourhourworkweek.com/blog/4-hour-body-bonus-material-and-bonus-chapters/. On or around March 1, 2011, Random House removed the case from the circuit court of Cook County to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In response, Aliano filed a motion to remand the case to the circuit court of Cook County. On June 7, 2011, the district court granted Aliano's motion and remanded the case to the circuit court.

¶ 5    On July 15, 2011, Aliano filed a four-count first amended class action complaint in the circuit court of Cook County. Count I alleged breach of warranty; count II alleged a violation of section 2 of the Consumer Fraud Act; count III alleged a violation of section 2 of the Deceptive Trade Practices Act; and count IV alleged unjust enrichment. Specifically, Aliano claimed that through the marketing statements in the book and on the Internet, Random House misrepresented that the bonus material would only be available to purchasers of the book. Aliano alleged that at the time Random House marketed, promoted, and published the book, there was no bonus material available. After Aliano filed his original complaint, Random House made the bonus material available to the public free of charge. The book

---

[1]Aliano did not specify the date on which he purchased the book.

contains approximately 550 pages and the bonus material is approximately 56 pages. The retail price of the book is $27. Aliano claimed that the retail price of the book was expected to represent the value of all the pages in the book plus the bonus material, for a total of 606 pages. He alleged that when he purchased the book, he only received the 550 pages in the printed book and did not receive the bonus material which was supposedly to be found on the book's website. Aliano claimed that the 550 pages that he received were only 91% of the 606 pages for which he paid. Thus, he claimed that the actual value of the 550 page book was $24.57 (91% of $27). Aliano sought damages in the amount of $2.43, which is the difference between the retail price of the book and what he claims is the actual value of the book he received. Aliano also sought damages for the lack of exclusive access to the bonus material based on Random House's decision to post the bonus material on the website for any and all who cared to retrieve it.

¶ 6        On or around August 5, 2011, Random House filed a motion to dismiss Aliano's first amended complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)). Random House argued that counts II and III of Aliano's first amended complaint should be dismissed because: Aliano failed to allege any deceptive conduct; Aliano failed to allege any damages; Aliano's consumer fraud claims are improperly based on a breach of promise; and Aliano failed to allege any unfair conduct, precluding his deceptive trade practices claim. Random House also argued that count IV of Aliano's first amended complaint should be dismissed because count IV was derivative of counts II and III and Aliano could not state a claim for unjust enrichment because he alleged that there was a contract between the parties.

¶ 7        On September 2, 2011, Aliano filed a response to Random House's motion to dismiss in which he voluntarily withdrew count I of his first amended complaint and requested leave to amend his complaint. On December 21, 2011, the trial court granted Random House's motion to dismiss with prejudice. In making its ruling, the trial court examined the marketing statements made in the book, and focused on the following language: "This book isn't just what you hold in your hands. Using passwords hidden in this book, you can access some of the most entertaining material that didn't make it in." The trial court concluded that the text of the marketing statements does not indicate that purchase of the book is required to access the bonus material. The trial court stated that nothing in the language of the marketing statements promises exclusive access to the bonus material, and there is nothing to suggest that purchasers of the book could reasonably expect to have exclusive access to the bonus material. Further, the trial court reasoned that because the book is widely available in bookstores across the country, any consumer could find the book in a store and write down the passwords in the book that were supposed to grant access to the bonus material. Thus, the trial court concluded that consumers were not required to purchase the book in order to access the bonus material. The trial court dismissed counts II and III of Aliano's first amended complaint because they failed to state a cause of action under the Consumer Fraud Act and Deceptive Trade Practices Act. Further, the trial court dismissed count IV of Aliano's first amended complaint because it was predicated on counts II and III and claims for unjust enrichment cannot stand when a contract exists between the parties.

¶ 8        On January 19, 2012, Aliano filed a timely notice of appeal. Therefore, this court has

jurisdiction to consider Aliano's arguments on appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008).

¶ 9                                                  ANALYSIS

¶ 10    We determine the following issues on appeal: (1) whether the trial court erred in dismissing counts II and III of Aliano's first amended complaint; and (2) whether the trial court erred in dismissing count IV of Aliano's first amended complaint on the ground that it is predicated on counts II and III.

¶ 11    We first determine whether the trial court erred in dismissing counts II and III of Aliano's first amended complaint.

¶ 12    Aliano argues that the trial court erred in dismissing his first amended complaint and holding that Random House's conduct was not deceptive as a matter of law. Specifically, Aliano argues that the allegations in his first amended complaint contained all of the elements necessary in stating a claim under the Consumer Fraud Act and Deceptive Trade Practices Act. Aliano argues that in order to state a claim under the Consumer Fraud Act, the plaintiff must allege: (1) a deceptive act or practice; (2) intent on the defendant's part that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992). Aliano asserts that the Consumer Fraud Act is supposed to be broadly applied and liberally construed (*DOD Technologies v. Mesirow Insurance Services, Inc.*, 381 Ill. App. 3d 1042, 1051, 887 N.E.2d 1, 9 (2008)), and that the trial court construed the Consumer Fraud Act far more narrowly than it was intended. He contends that in stating a claim under the Consumer Fraud Act, the plaintiff does not need to show that a defendant intended to deceive, but only that it intended the plaintiff to rely on its act or information. *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1065, 654 N.E.2d 694, 700 (1995). Even a negligent or innocent misrepresentation may be actionable under the Consumer Fraud Act. *Id.*, 654 N.E.2d at 700-01. Aliano asserts that to state a claim under the Deceptive Trade Practices Act, a plaintiff must only allege that the defendant's conduct fell within one of the subsections of the statute. See 815 ILCS 510/2 (West 2010).

¶ 13    Aliano argues that he sufficiently alleged that Random House misrepresented that consumers needed to purchase the book in order to access the bonus material; that Random House intended that consumers rely on this misrepresentation; and that the misrepresentation occurred in the course of conduct involving trade or commerce. He asserts that he sought damages for the lack of exclusive access to the bonus material; and also because he paid what he terms an inflated price for the book that was expected to represent the value of the book *and* the bonus material, but did not. Aliano claims that he alleged that his damages were a direct result of the representations in Random House's marketing statements. Aliano points out that he also alleged that Random House's conduct was unfair because: it offended public policy; it was immoral, unethical, oppressive, or unscrupulous; and it caused substantial injury to consumers. Aliano contends that at the very least, Random House's marketing statements about the bonus material were misleading and created the likelihood of deception. Also, Aliano argues that the trial court used the wrong standard in its analysis

because it concluded that nothing in the marketing statements promises that purchasers of the book would have exclusive access to the bonus material. He claims that the marketing statements were misleading, even though Random House did not explicitly promise that purchasers would have exclusive access to the bonus material. Aliano argues that although the trial court may have disagreed with his interpretation of the marketing statements, his interpretation was reasonable and was therefore sufficient to defeat a motion to dismiss pursuant to section 2-615 of the Code.

¶ 14　　　Further, Aliano argues that the trial court improperly considered the effect the marketing statements had on consumers, rather than the intent of Random House. He contends that the effect a misrepresentation has on consumers is normally a question of fact which is not susceptible to a motion to dismiss. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 34-35, 585 N.E.2d 51, 66 (1991). Aliano claims that it is clear that the trial court focused on the effect of the marketing statements because it concluded that any consumer could find the book in a store and write down the passwords that are supposed to grant access to the bonus material. Aliano argues that the trial court's conclusion focuses on whether Random House's marketing statements promised purchasers exclusive access to the bonus material, instead of the proper inquiry which was Random House's intent to deceive consumers with its marketing statements. He contends that in ruling on the motion to dismiss, the trial court should not have speculated about whether consumers could circumvent the process of purchasing the book in order to access the bonus material. Aliano argues that such determinations are more appropriate for the trier of fact. See *Kedziora v. Citicorp National Services, Inc.*, 780 F. Supp. 516, 534 (N.D. Ill. 1991); *Daley*,146 Ill. 2d at 34-35, 585 N.E.2d at 66. Aliano claims that if Random House did not intend for consumers to believe that purchase of the book was required to access the bonus material, then it could have advertised the bonus material as free material. Rather, Aliano argues that Random House represented that the bonus material would be revealed through passwords that consumers would find after they purchased the book. Aliano asserts that although the marketing statements can be construed as being true, they can also be construed as deceptive and misleading. See *Williams v. Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 222, 379 N.E.2d 52, 54 (1978).

¶ 15　　　In response, Random House argues that the trial court correctly held that the allegations in Aliano's first amended complaint were insufficient to state a cause of action under the Consumer Fraud Act and Deceptive Trade Practices Act. Random House asserts that the core of Aliano's claims was that Random House represented that purchase of the book was required to access the bonus material. Random House argues that the trial court correctly found that nothing in Random House's marketing statements said that purchase of the book was required to access the bonus material. Random House contends that the trial court was correct in stating that if purchase of the book was required to access the bonus material, then Random House would have used some method to restrict the public access to the bonus material.

¶ 16　　　Random House next argues that Aliano's first amended complaint was properly dismissed because he received the benefit of his bargain, and thus suffered no damages. Random House points out that Aliano alleged that he only received 550 pages of material,

instead of the 606 pages of material for which he paid. However, Random House argues that Aliano did in fact receive the 606 pages of material for which he paid once the bonus material was posted on the Internet free of charge. Random House contends that it promised to post the bonus material on the Internet and fulfilled its promise. Random House argues that although others had access to the bonus material as well, Aliano received exactly what he paid for. Random House points out that Aliano did not allege that he was unable to access the bonus material or that any bonus material was missing. Thus, Random House argues that Aliano was not harmed by the marketing statements in the book.

¶ 17    Additionally, Random House argues that the consumer fraud allegations in Aliano's first amended complaint are deficient because they are based solely on an alleged breach of promise. Random House contends that despite the way a plaintiff presents his allegations, breach of a contractual promise, without more, is not actionable under the Consumer Fraud Act. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005). Random House asserts that Aliano's consumer fraud claims are based on the alleged promise that purchase of the book is required to obtain access to the bonus material. Random House claims that Aliano did not allege any deceptive conduct beyond breach of this alleged promise. Thus, Random House argues that Aliano's consumer fraud allegations are deficient.

¶ 18    Further, Random House argues that the consumer fraud allegations in Aliano's first amended complaint are deficient because he did not allege facts supporting a claim of unfair practice and did not allege that Random House's acts proximately caused his damages. Random House argues that to allege that a practice is unfair, a plaintiff must plead that the practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 960-61 (2002). Random House claims that Aliano simply recited the criteria for an unfair practice without presenting any facts to support the recited allegations. Random House also argues that in alleging a claim for consumer fraud, a plaintiff must show that a wrongful act by the defendant proximately caused his loss. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002). Random House claims that Aliano simply alleged that Random House's representations proximately caused his loss, without presenting any facts to support the allegation. Random House argues that Aliano cannot demonstrate proximate cause because there is no immediate and direct relationship between Random House's representations and Aliano's loss. Random House contends that the book states that it contains passwords that will allow access to the bonus material, but it does not state that consumers would have to purchase the book in order to access the bonus material. Thus, Random House asserts that there is no causal nexus between Random House's representations and Aliano's alleged loss. Also, Random House argues that Aliano cannot demonstrate that he was actually deceived because he received exactly what he paid for. Therefore, Random House argues that the consumer fraud allegations in Aliano's first amended complaint are deficient.

¶ 19    Lastly, Random House argues that the trial court correctly dismissed count IV in Aliano's first amended complaint, which alleged unjust enrichment. Random House argues that Aliano forfeited review of this issue because he failed to raise it in his brief on appeal.

*Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 698 n.2, 832 N.E.2d 189, 193 n.2 (2005). Notwithstanding the forfeiture argument, Random House argues that the trial court correctly dismissed count IV because it was based on Aliano's deficient consumer fraud and deceptive trade practices claims, and it is not a separate cause of action that can stand alone. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (2009). When an underlying claim of fraud is deficient, the unjust enrichment claim should also be dismissed. *Id*. at 1025, 905 N.E.2d at 928. Random House argues that because the trial court properly held that Aliano's consumer fraud and deceptive trade practices allegations were deficient, it properly dismissed count IV which alleged unjust enrichment. Also, Random House argues that a plaintiff cannot allege unjust enrichment while also alleging that there is a contractual relationship between the parties. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005). Random House contends that the trial court correctly held that the purchase and sale of a book is a contractual relationship, precluding Aliano from alleging unjust enrichment. Thus, Random House argues that the trial court correctly dismissed count IV of Aliano's first amended complaint.

¶ 20 "A motion to dismiss pursuant to section 2-615 of the Code [citation] attacks the legal sufficiency of a complaint by alleging defects on the face of a complaint." *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81, 806 N.E.2d 632, 634 (2004). In order to survive a motion to dismiss, the plaintiff's complaint must allege facts that set forth the essential elements of the cause of action. *Visvardis v. Ferleger*, 375 Ill. App. 3d 719, 724, 873 N.E.2d 436, 441 (2007). In ruling on a motion to dismiss pursuant to section 2-615 of the Code, a court must accept as true all well-pleaded allegations of fact in the complaint and all reasonable inferences therefrom. *Vitro*, 209 Ill. 2d at 81, 806 N.E.2d at 634. "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Id*. The court must construe pleadings liberally when ruling on a motion to dismiss. *Visvardis*, 375 Ill. App. 3d at 724, 873 N.E.2d at 441. "However, the court will not admit conclusions of law and conclusory allegations not supported by specific facts." *Id*. The reviewing court applies the *de novo* standard of review to a trial court's dismissal pursuant to section 2-615 of the Code. *Id*.

¶ 21 Count II of Aliano's first amended complaint alleged a violation of section 2 of the Consumer Fraud Act. Section 2 of the Consumer Fraud Act states:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the [Deceptive Trade Practices Act], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 2010).

¶ 22    Count III of Aliano's first amended complaint alleged a violation of section 2 of the Deceptive Trade Practices Act. Specifically, count III was based on the following provisions within section 2 of the Deceptive Trade Practices Act:

"(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

* * *

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

* * *

(9) advertises goods or services with intent not to sell them as advertised;

* * *

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

(b) In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." 815 ILCS 510/2(a), (a)(5), (a)(9), (a)(12), (b) (West 2010).

¶ 23    Under the Consumer Fraud Act, deceptive practices include advertising goods with the intent not to sell them as advertised, and engaging in conduct that creates the likelihood of confusion or misunderstanding. *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 857, 658 N.E.2d 1325, 1335 (1995). Courts have held that an advertisement is deceptive on its face if it creates the likelihood of deception or has the capacity to deceive. *Id.*, 658 N.E.2d at 1335-36. "Where the deception is based on a misrepresentation, that misrepresentation must be material and must relate to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question." *Id.*, 658 N.E.2d at 1336.

¶ 24    In order to adequately plead a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Oliveira*, 201 Ill. 2d at 149, 776 N.E.2d at 160. "[T]he required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504, 675 N.E.2d 584, 595 (1996). In analyzing deceptive conduct, the Consumer Fraud Act allows courts to refer to interpretations of the Federal Trade Commission and federal decisions under the Federal Trade Commission Act (15 U.S.C. § 45). See 815 ILCS 505/2 (West 2010). The Federal Trade Commission has explained the standard for analyzing deceptive conduct as follows:

" 'It is well established that the test to be used in interpreting advertising is the net impression that it is likely to make on the general populace. [Citations.] It is immaterial that a given phrase considered technically may be construed so as not to constitute a misrepresentation or that a deception is accomplished by innuendo rather than by affirmative misstatement. [Citations.] Where an advertisement is subject to two

-9-

interpretations, one of which is false, the Commission is not bound to assume that the truthful interpretation is the only one which will be left impressed on the mind of every reader. [Citations.]' " *Williams*, 62 Ill. App. 3d at 222, 379 N.E.2d at 54 (quoting *In re Rodale Press, Inc.*, 71 F.T.C. 1184 (1967)).

¶ 25     Alternatively, under the Consumer Fraud Act, a plaintiff may recover against a defendant for an unfair practice as opposed to deceptive conduct. *Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960. In order to allege that a practice is unfair, a plaintiff must plead that the practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Id.* at 417-18, 775 N.E.2d at 960-61.

¶ 26     We are not persuaded by Aliano's arguments. Although the threshold for withstanding a motion to dismiss pursuant to section 2-615 of the Code is relatively low, the allegations in Aliano's first amended complaint did not amount to deceptive conduct. In order for a defendant's conduct to be considered deceptive under the Consumer Fraud Act, it must, at the very least, create the likelihood of confusion or misunderstanding. See *Smith*, 276 Ill. App. 3d at 857, 658 N.E.2d at 1335. In his first amended complaint, Aliano alleged that Random House misrepresented that purchase of the book was required to access the bonus material, and that purchasers of the book would have exclusive access to the bonus material. However, as the trial court correctly concluded, there was nothing in the marketing statements that supported Aliano's allegations. The operative language in the marketing statements is as follows: "This book isn't just what you hold in your hands. Using passwords hidden in this book, you can access some of the most entertaining material that didn't make it in." This language does not state or suggest that purchase of the book is required to access the bonus material. Likewise, this language does not suggest that book purchasers would have exclusive access to the bonus material. In fact, the language states that the bonus material is material that "didn't make it in," suggesting that the bonus material is separate and distinct from the book.

¶ 27     Moreover, neither party addresses the language in the bonus material marketing statements which says "[f]or this and much more, visit the free message boards (where I also post answers and suggestions) at www.fourhourbody.com." The fact that Random House stated that the bonus material would be available on "free message boards" further suggests that Random House did not misrepresent the exclusivity of the bonus material and that Random House did not misrepresent that purchase of the book was required to access the bonus material. Based on all the language in the marketing statements, we find that the marketing statements do not create the likelihood of confusion or misunderstanding, despite Aliano's contrary interpretation.

¶ 28     Although the language of the marketing statements is clever and is clearly designed to pique the interest of consumers, we cannot say that the marketing statements misrepresented material facts. We note that Aliano points out that the Federal Trade Commission has held that deceptive conduct can be analyzed based on the net impression an advertisement makes on the general public; and that where an advertisement is subject to two interpretations, one of which is false, the court is not bound to assume that the truthful interpretation is the only one which will be left impressed on the mind of every reader. See *Williams*, 62 Ill. App. 3d at 222, 379 N.E.2d at 54 (quoting *In re Rodale Press, Inc.*, 71 F.T.C. 1184 (1967)). However,

in this case, the net impression that the marketing statements make on the general public is that the bonus material is accessible with or without purchasing the book. The marketing statements do not contain any false statements and cannot reasonably be construed as misleading. Thus, Aliano was unable to sufficiently allege deceptive conduct in his first amended complaint. Likewise, Aliano was unable to sufficiently allege unfair practice as Random House's conduct did not offend public policy; the conduct was not immoral, unethical, oppressive, or unscrupulous; and the conduct did not cause substantial injury to consumers. We hold that the trial court did not err in dismissing counts II and III of Aliano's first amended complaint.

¶ 29    We note that Aliano requested leave to amend his first amended complaint before the trial court in his response to Random House's motion to dismiss. A trial court's ruling regarding the right to file an amended complaint will not be reversed absent an abuse of discretion. *Orr v. Shepard*, 171 Ill. App. 3d 104, 109, 524 N.E.2d 1105, 1109 (1988). However, as Random House points out, Aliano never formally moved for leave to file a second amended complaint and never specified what amendments he would make to his complaint. Thus, the trial court did not abuse its discretion in dismissing Aliano's first amended complaint with prejudice. See *Cooper v. United Development Co.*, 122 Ill. App. 3d 850, 859-60, 462 N.E.2d 629, 636 (1984) (trial court did not abuse its discretion in refusing to grant plaintiff leave to file an amended complaint where no amendment was presented, and no specific indication was given as to the contents of the proposed amendatory document). Moreover, Aliano did not present an argument regarding this issue in his brief on appeal. Therefore, we hold that the trial court properly dismissed Aliano's first amended complaint with prejudice, thereby precluding further amendment of the first amended complaint.

¶ 30    Finally, we determine whether the trial court erred in dismissing count IV of Aliano's first amended complaint, which alleged unjust enrichment. As Random House points out, Aliano did not present any arguments regarding this issue in his brief on appeal.[2] Thus, Random House argues that Aliano has forfeited review of this issue on appeal. See *Sklodowski*, 358 Ill. App. 3d at 698 n.2, 832 N.E.2d at 193 n.2. We agree. Therefore, we need not address this issue.

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32    Affirmed.

---

[2]We note that Aliano also did not present any arguments regarding this issue in his reply brief.