STEPHEN STERN *et al.*, Plaintiffs-Appellants, v. NORWEST MORTGAGE, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—95—1627

Opinion filed September 30, 1996.—Rehearing denied November 21, 1996.

Edelman & Combs, of Chicago (Daniel A. Edelman, Cathleen M. Combs, and J. Eric Vander Arend, of counsel), for appellants.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Peter C. Woodford and Christopher E. Paetsch, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, Stephen Stern and his wife, Catherine Harth, (plaintiffs or Stern), filed a class action against defendant, Norwest Mortgage, Inc. (defendant or Norwest), in the circuit court of Cook County. Plaintiffs allege that defendant (1) violated the Illinois Mortgage Escrow Account Act (the Act) (765 ILCS 910/1 *et seq.* (West 1992)) by charging them and others similarly situated an "escrow waiver fee," and (2) misrepresented the provisions of the Act in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)).

Defendant filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)) in which it maintained that plaintiffs' complaint failed to state a cause of action, because (1) the "escrow waiver fee" was permitted by the Act, or, alternatively, (2) the Act was preempted by federal law, and (3) plaintiffs' construction of the Act renders it unconstitutionally vague.

The trial court granted defendant's motion to dismiss and plaintiffs appeal, raising issues as to whether: (1) the Act permits a lender to charge an "escrow waiver fee" if a borrower elects to post an interest-bearing time deposit (certificate of deposit) with the lender instead of establishing a tax escrow account; (2) Norwest violated the Consumer Fraud Act by representing to plaintiffs that they were required to pay the escrow waiver fee; (3) the Act is preempted by the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA) (12 U.S.C. § 1735f (1994)); and (4) plaintiffs' construction of the Act renders it unconstitutionally vague.

We reverse as to the defendant's right to impose an escrow waiver fee and affirm on the failure to state a cause of action under the Consumer Fraud Act.

■ The Act provides in relevant part:

"When the mortgage is reduced to 65% of its original amount by payments of the borrower, timely made according to the provisions of the loan agreement secured by the mortgage, and the borrower is otherwise not in default on the loan agreement, the mortgage lender must notify the borrower that he may terminate such escrow account or that he may elect to continue it until he requests a termination thereof, or until the mortgage is paid in full, whichever occurs first." 765 ILCS 910/5 (West 1992).

The Act further provides that at any time during the term of the loan "[i]n lieu of the mortgage lender establishing an escrow account or an escrow-like arrangement, a borrower may pledge an interest bearing time deposit with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes." 765 ILCS 910/6 (West 1992).

In July of 1992, plaintiffs obtained a mortgage loan from Norwest in order to purchase a single-family home in Chicago. Plaintiffs chose to exercise the option of pledging a certificate of deposit sufficient to cover the anticipated taxes.

Norwest, however, informed plaintiffs that they would be charged a "one-time service fee" equal to .25% of the principal amount of the loan ($492.50) should they exercise this option. Plaintiffs paid this charge and closed the transaction. Soon thereafter they brought a class action against Norwest.

In reviewing motions to dismiss, this court determines the matter *de novo. Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638 (1995). The complaint may only be dismissed if there is no set of facts that can be proven that state a cause of action. *Doe v. Calumet City*, 161 Ill. 2d 374, 385 (1994).

The question before us is one of statutory interpretation. The fundamental canon of construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995). Courts will look first to the words of the statute; the language used by the legislature being the best indication of legislative intent. *Kirwan v. Welch*, 133 Ill. 2d 163, 165 (1989). To determine the meaning of the statute, it must be read in its entirety and should not be construed so as to render any of its parts superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178 (1990). When the statutory language is clear, no resort to other tools of interpretation is necessary. *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 541 (1990). Moreover, courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment. *People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 394 (1992).

Norwest suggests that it can impose a waiver fee without limitation; one that would be in excess of any interest that the borrower might have expected to receive from his certificate of deposit. It is difficult to refer to the option granted by the Act as a right if it can be so easily divested. The defendant has set the escrow waiver fee at .25% of the loan, which yields almost $500. This would represent the first five or six years of interest that the borrower could expect to receive in interest from his investment. Under Norwest's interpreta-

tion, the fee could be pegged higher, which would reduce the return to the borrower even more markedly.

By its action, Norwest's fee appropriates for itself the very benefit conferred upon the borrower by the Act—the return earned upon the money held to ensure the payment of taxes. The right or option granted by section 6 of the Act is an illusory right or option under the defendant's reading of the enactment.

Plaintiffs are correct that the Act seems a legislative response to "widespread complaints (and litigation) concerning the lender's abuse of escrow accounts." Passage of the Act followed unsuccessful attempts by borrowers to alter the traditional escrow arrangement. See, *e.g.*, *Sears v. First Federal Savings & Loan Ass'n*, 1 Ill. App. 3d 621 (1971) (plaintiff class alleged that lender violated its duty as trustee and was unjustly enriched by commingling escrowed funds and receiving a return on investing the funds).

Plaintiffs also cite the legislative history of the Act as support for their interpretation, although we need refer to this only where we determine that there is an ambiguity. Representative Williams explained the bill as follows:

"Essentially, what it does is it gives an option now to the borrower at the time of making the mortgage that they can set up a collateralized account in lieu of the Escrow for payment of the taxes, and they will receive interest on that collateral account that they do pledge and, also, provides that when a mortgage has been reduced to sixty-five percent, there will no longer be any need for the Savings and Loans to require the setting up of an Escrow." 79th Ill. Gen. Assem., House Proceedings, June 19, 1995 (remarks of Representative Paul Williams).

From this we glean that one of the purposes behind the Act was to allow the borrower to earn interest, as opposed to the lender, which supports plaintiffs' claim that a waiver fee frustrates this purpose—simply by forcing the borrower to pay the lender a fee which reduces the monetary benefit conferred by the Act on the borrower and mitigating the loss of revenue incurred by the lender.

■ Legislative intent is derived from the language of the statute, evaluated as a whole, with each provision construed in connection with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994).

The parties indulge in lengthy discussion of the rule of *expressio unius est exclusio alterius*—express mention and implied exclusion. Where a statute enumerates certain conditions, that enumeration implies the exclusion of all other things although there are no negative words of prohibition. *Department of Corrections v. Illinois Civil*

*Service Comm'n*, 187 Ill. App. 3d 304, 309-10 (1989). However, we need not resort to tools of statutory construction in light of our finding the Act unambiguous.

■ Instead, we apply its "plain language" to conclude that the charging of an escrow waiver fee runs contrary to the purpose behind the Act—to confer an economic benefit formerly reserved for lenders on borrowers meeting certain express conditions. Accordingly, we reverse the trial court's order of dismissal.

Defendant offers two alternative arguments which, if successful, would alter the above conclusion—the Act is preempted by federal law and is unconstitutionally vague.

The supremacy clause of the United States Constitution provides, in relevant part, that: "[T]he Laws of the United States *** shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI. Whether a federal law is preemptive of a state law depends upon Congress' purpose in enacting the statute. *National Commercial Banking Corp. of Australia, Ltd. v. Harris*, 125 Ill. 2d 448, 463 (1988). This court must inquire whether Congress intended to preempt state law. *Harris*, 125 Ill. 2d at 463. To properly address this inquiry, this court is guided by some well-established principles articulated by the Supreme Court:

> "Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' [Citation.]
>
> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' [citation], or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ***,' [citations]." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982).

Defendant maintains that the Act, as interpreted by plaintiffs, is preempted by the Depository Institutions Deregulation and Monetary Control Act of 1980 (12 U.S.C. § 1735f—7a(1) (1994)) (the Deregulation Act), which provides in relevant part:

"The provisions of the constitution or laws of any State expressly limiting the rate of interest, discount points, finance charges or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale or advance which is—

(A) secured by a first lien on residential real estate property ***

(B) made after March 31, 1980."

If the escrow waiver fee is one of the "other charges which may be charged," then the State is powerless to regulate limitations upon the lender in this regard. However, in interpreting this section, paragraph 3(c) of the Federal Home Loan Bank Board regulations promulgated pursuant to section 501 of the Deregulation Act further defines the contours of the federal regulatory scheme, providing:

"Nothing in this section preempts limitation in state laws on prepayment charges, attorneys fees, late charges or *other provisions designed to protect borrowers.*" (Emphasis added.) 12 C.F.R. § 590.3(c) (1996).

The Act's provision of the right to forego the traditional escrow account is clearly "designed to protect borrowers" and is not, therefore, preempted by the Deregulation Act. This conclusion is supported by brief examination of the history and purpose behind the Deregulation Act.

In the late 1970s, interest rates exceeded the levels lenders could legally charge under state usury laws. Congress responded by enacting the Deregulation Act, which eliminated interest rate limits set by state usury laws with respect to first mortgage real estate financing. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill. App. 3d 398, 404 (1991). Given the legislative intent of this Act and its interrelationship with state statutes, it is appropriate to apply its prohibitions only to those transactions clearly provided within its scope. *Fidelity*, 214 Ill. App. 3d at 406. Finally, the creditor must bear the burden of showing that the transaction at issue falls within the scope of the Deregulation Act. *Fidelity*, 214 Ill. App. 3d at 406. Defendant cannot meet this burden.

By this holding, we do not suggest that a lender might be prohibited from imposing a modest service charge related to the actual cost of servicing a borrower's mortgage account where there is a need to ascertain the payment of taxes, provided the charge is rationally related to that end. The escrow-waiver fee is not related to service, nor was it represented to be.

Alternatively, defendant argues that, as interpreted by plaintiffs, section 6 of the Act is unconstitutionally vague. The fourteenth

amendment's due process clause "insist[s] that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972). Additionally, in order to prevent arbitrary and discriminatory enforcement, laws must provide explicit standards for those who apply them. *Grayned*, 408 U.S. at 108, 33 L. Ed. 2d at 227, 92 S. Ct. at 2299. A statute violates due process under either or both the United States or Illinois Constitution on the basis of vagueness "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." *People v. Burpo*, 164 Ill. 2d 261, 266 (1995).

The Act is a relatively straightforward statute. That a prohibition against escrow waiver fees was not explicitly mentioned does not cast doubt as to its constitutional validity. Any "confusion" was interposed by defendant's attempt to frustrate the purpose of the Act, clearly a borrower-friendly statute.

■ Lastly, defendant maintains that no cause of action can be brought under the Consumer Fraud Act. 815 ILCS 505/2 (West 1992). Plaintiffs' complaint alleges that Norwest violated the Consumer Fraud Act by (1) unlawfully requiring them to pay an opt-out fee and (2) failing to inform them that Norwest's imposition of this fee violated the Act.

Section 2 of the Consumer Fraud Act provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

We cannot say that plaintiffs have stated a cognizable cause of action under the Consumer Fraud Act. The parties have had a legitimate disagreement over the implications of section 6 of the Act. While defendant has urged upon us a position with which we do not agree, we cannot say that such a position is the result of any "unfair or deceptive acts or practices" nor can the acts of defendant be characterized as "fraud, false pretense, false promise" or concealment of any material fact. This is unlike the culpable defendant in *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575 (1985), who adopted a practice of charging consumers sales tax in an amount in

excess of the amount authorized by law. Defendant there was well aware of the appropriate tax levied on the transaction. The Consumer Fraud Act prohibits deception, not error. *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138 (1995); *People ex rel. Hartigan v. Maclean Hunter Publishing Corp.*, 119 Ill. App. 3d 1049 (1983). Having made this statement, we do not reject or mean to affect those cases which have properly stated that an innocent misrepresentation can be actionable under the Consumer Fraud Act. *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742 (1995); *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790 (1994).

The plaintiffs rely upon *Heastie v. Community Bank*, 727 F. Supp. 1133 (N.D. Ill. 1990), where the seller required the purchaser to execute a side agreement waiving her rights to assert certain claims and defenses of which the seller was aware. This is hardly the instant case, where parties disagree about the effect of an unconstrued statute.

We do not believe that the assertion of lender's right to an escrow waiver fee is a *per se* violation of the Consumer Fraud Act. Although the Consumer Fraud Act has loosened the requirement of *scienter* (*Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70 (1992)) and released the claimant of the burden of showing reliance, there must be a claim seated in deceptive acts rather than a reasonable difference of opinion as to the meaning of an act of the Illinois General Assembly. If, the day after this opinion is spread of record, defendant seeks to impose such a fee upon a borrower, a different result would obtain. By this, we do not mean that every deceiver is like every dog, entitled to one bite. We mean only that these facts do not lend themselves to an action under the Consumer Fraud Act.

In conclusion, we find the defendant's imposition of an escrow waiver fee is prohibited by the Act, which is not preempted by the Deregulation Act or unconstitutionally vague. Further, we find that plaintiffs have failed to state a cause of action under the Consumer Fraud Act. Accordingly, we reverse the order of the trial court dismissing plaintiffs' complaint as to count I and affirm as to count II.

Affirmed in part; reversed in part and remanded.

TULLY, P.J., and GALLAGHER, J., concur.