(No. 80465.—

RODNEY LEE *et al.*, Appellees, v. NATIONWIDE CASSEL, L.P., *et al.*, Appellants.

*Opinion filed November 21, 1996.—Modified on denial of rehearing February 3, 1997.*

Bonita L. Stone and Lisa K. Liou, of Katten, Muchin & Zavis, of Chicago, for appellants.

Daniel A. Edelman, Cathleen M. Combs, J. Eric Vander Arend, James O. Latturner, John J. Simonetti and Danielle R. Gomez, of Edelman & Combs, and Robert C. Morton, all of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff Rodney Lee and counterclaimant Edelmira

Rivera (hereinafter plaintiffs) sought to enjoin the enforcement of certain motor vehicle installment sales contracts by defendant/counterdefendant Nationwide Cassel, L.P., d/b/a Nationwide Acceptance Corp. and N.A.C. Management Corp. (hereinafter defendant). Plaintiffs also sought compensatory and punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1992)) and the Illinois Sales Finance Agency Act (205 ILCS 660/16 (West 1992)). The circuit court of Cook County consolidated the two cases and dismissed plaintiffs' claims on the pleadings. 735 ILCS 5/2—615 (West 1992). The appellate court reversed and remanded. 277 Ill. App. 3d 511. We allowed defendant's petition for leave to appeal. 155 Ill. 2d R. 315. For the reasons that follow, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL HISTORY

In August 1991, Lee's roommate, Dennis L. Davis, attempted to purchase a car from Tower Oldsmobile, Inc. Davis completed a credit application at the dealership in order to obtain financing for the vehicle. Defendant, a sales finance agency which purchases installment contracts from dealerships, was notified of Davis' application and ordered a credit report. Based on the credit information, the dealership refused to approve Davis' application unless he provided a co-signer for the purchase of the vehicle.

At Davis' request, Lee agreed to act as co-signer. Lee completed a credit application at the dealership which identified him as a "co-signer for Davis." Defendant obtained a credit report on Lee, after which the dealership approved financing of the vehicle. Both Davis and Lee signed the sales contract on lines marked "buyer," even though the contract contained a separate line marked "guarantor."

The facts of Rivera's claim are similar. Her friend,

Rommel Gonzalez, attempted to purchase a vehicle at Olympic Hyundai. When Gonzalez applied for financing at the dealership, defendant requested credit information on him. The dealership refused to approve the loan unless Gonzalez provided a co-signer. Rivera agreed to act as co-signer, and furnished credit information to defendant. The financing was then approved. Gonzalez and Rivera signed the contract on lines marked "buyer," leaving blank the line entitled "guarantor."

Sometime after Davis and Gonzalez took delivery of the vehicles, each of them failed to make scheduled loan payments to defendant. Without instituting legal proceedings against Davis, defendant demanded that Lee pay the debt, and attempted to enforce a wage assignment against him. Defendant also demanded payment from Rivera and instituted a collection action against her and Gonzalez.

Lee then filed a complaint seeking to enjoin defendant's enforcement of the contract against him. Lee alleged that section 18 of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/18 (West 1992)) prevents defendant from holding him liable under the contract because he did not actually receive the vehicle and he was not the parent or spouse of a person who actually received the vehicle. Lee also sought compensatory and punitive damages under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 1992)) and the Sales Finance Agency Act (205 ILCS 660/1 et seq. (West 1992)) for defendant's alleged attempts to create and enforce liability on his part for the debt when section 18 of the Motor Vehicle Retail Installment Sales Act precludes such liability. In the collection suit brought against her, Rivera filed a counterclaim containing substantially the same allegations as those in Lee's complaint.

After consolidating the two actions, the circuit court

granted defendant's motion to dismiss based on section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). The court found that under *Magna Bank v. Comer*, 274 Ill. App. 3d 788 (1992), the plaintiffs' signatures on the contracts as buyers made them jointly liable with their friends who also signed as buyers, notwithstanding the allegations that plaintiffs, unlike their friends, never actually received the vehicles. The court stated in its memorandum of opinion that it was obligated to "follow the decision of the Fourth District [of the] Appellate Court [in *Comer*] if it applies since there is no First District decision on this issue." The circuit court also dismissed the counts based on the Consumer Fraud and Deceptive Business Practices Act and the Sales Finance Agency Act because plaintiffs failed to allege any fraud or misrepresentation by defendant.

The appellate court reversed and remanded. 277 Ill. App. 3d 511. It noted that since the time of the trial court's dismissal of plaintiffs' claims, two appellate court opinions from the First District had departed from *Comer* by holding that section 18 of the Motor Vehicle Retail Installment Sales Act limits primary liability under an automobile installment contract to those consumers who take physical possession of the vehicle. See *Arca v. Colonial Bank & Trust Co.*, 265 Ill. App. 3d 498 (1994); *Taylor v. Trans Acceptance Corp.*, 267 Ill. App. 3d 562 (1994). The instant appellate court panel likewise rejected *Comer* and followed *Arca* and *Taylor* by holding that plaintiffs were not liable under the contracts because they did not actually receive the vehicles. In addition, the court held that plaintiffs had set out facts with sufficient particularity to state a claim under the Consumer Fraud and Deceptive Business Practices Act by alleging that defendant attempted to create and enforce liability against them when it knew they could not legally be held liable under the contracts.

## ANALYSIS

### I. Co-Signer Liability

In considering a motion to dismiss, we accept as true all well-pleaded facts and draw all inferences from those facts in favor of the nonmovant. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 473 (1990). We will sustain a dismissal for failure to state a claim only if it clearly appears that no set of facts could be proved under the allegations which would entitle the party to relief. *Meerbrey*, 139 Ill. 2d at 473.

Section 18 of the Motor Vehicle Retail Installment Sales Act is entitled "Co-signers" and provides as follows:

"§ 18. Each person, other than a seller or holder, who signs a retail installment contract may be held liable only to the extent that he actually receives the motor vehicle described or identified in the contract, except that a parent or spouse who co-signs such retail installment contract may be held liable to the full extent of the deferred payment price notwithstanding such parent or spouse has not actually received the motor vehicle described or identified in the contract and except to the extent such person other than a seller or holder, signs in the capacity of a guarantor of collection.

The obligation of such guarantor is secondary, and not primary. The obligation arises only after the seller or holder has diligently taken all ordinary legal means to collect the debt from the primary obligor, but has not received full payment from such primary obligor or obligors.

No provisions in a retail installment contract obligating such guarantor is valid unless:

(1) there appears below the signature space provided for such guarantor the following:

'I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein.'; and

(2) unless the guarantor, in addition to signing the retail installment contract, signs a separate instrument in the following form:

'EXPLANATION OF GUARANTOR'S OBLIGATION

You ... (name of guarantor) by signing the retail install-ment contract and this document are agreeing that you will pay $ ... (total deferred payment price) for the purchase of ... (description of goods or services) purchased by ... (name of buyer) from ... (name of seller).

Your obligation arises only after the seller or holder has attempted through the use of the court system to col-lect this amount from the buyer.

If the seller cannot collect this amount from the buyer, you will be obligated to pay even though you are not entitled to any of the goods or services furnished. The seller is entitled to sue you in court for the payment of the amount due.'

The instrument must be printed, typed, or otherwise reproduced in a size and style equal to at least 8 point bold type, may contain no other matter (except a union printing label) than above set forth and must bear the signature of the co-signer and no other person. The seller must give the co-signer a copy of the retail installment contract and a copy of the co-signer statement." 815 ILCS 375/18 (West 1992).

Plaintiffs contend that they are exempt from li-ability under this section because they did not actually receive the vehicles that were the subject of the con-tracts, and because they are neither parents nor spouses of their friends who did actually receive the vehicles. Plaintiffs also allege that defendant instructed the dealership to have them sign the contracts as buyers, and that they were never shown or asked to sign an instrument entitled "Explanation of Guarantor's Obliga-tion" as described in the statute.

Defendant contends that plaintiffs are primarily ob-ligated for the debts because they signed the contracts as buyers rather than guarantors. Defendant also argues that under section 18, plaintiffs "actually received" the motor vehicles because plaintiffs were listed as owners on the certificates of title issued for the vehicles.

As originally enacted in 1967, section 18 simply

provided that a person "other than the retail buyer or spouse of the buyer" could not be held liable under a motor vehicle installment contract unless that person received and signed a form entitled "Explanation of Co-Signer Obligation." This form explained that the co-signer could be sued and held liable for the full amount of the debt even though the buyer might have funds to pay the amount due. Ill. Rev. Stat. 1969, ch. 121$^1$/$_2$, par. 578.

Section 18 was substantially amended in 1975, resulting in the version at issue, quoted above in its entirety. This 1975 amendment changed the statute by providing that no person who signs a motor vehicle installment contract may be held liable for the debt unless he actually receives the vehicle, is the parent or spouse of someone who actually receives the vehicle, or signs in the capacity of a guarantor of collection. The amended statute further provides that the obligation of a guarantor of collection is secondary, and not primary. The statute explains that this secondary liability arises only after attempts to collect the full amount of the debt from the primary obligor through the legal process have failed.

A comparison of the 1975 amended statute with its predecessor conclusively demonstrates that plaintiffs may not be held liable under the instant installment sales contracts. Defendant contends that plaintiffs are primarily liable because they signed the contracts as buyers and not as guarantors. Under the amended statute, however, primary liability depends not on the capacity in which a person purportedly signs the contract, but rather on the person's actual receipt of the vehicle. The 1975 amendment specifically deleted the term "retail buyer" from the statute and substituted the word "person" in its place. The effect of this change is to prohibit a person from being held primarily liable

under a motor vehicle installment contract if that person does not actually receive the vehicle and is not the spouse or parent of a person who actually receives the vehicle.

Defendant argues that plaintiffs did "actually receive" the vehicles as required by the amended statute because their names were placed on the vehicles' titles. This argument erroneously equates "actual receipt" with "legal receipt" and thereby completely ignores the effect of the 1975 amendment. Prior to the amendment, any "retail buyer" of a vehicle under an installment contract could be held liable for the debt regardless of whether he "actually received" the vehicle. The name of any such "retail buyer" would, of course, be placed on the vehicle's title. By omitting any reference to the "retail buyer," the amended statute renders irrelevant for purposes of installment sales liability the vehicle's legal ownership status.[1] Among those persons who sign the sales contract, only those who actually receive physical possession of the vehicle may be held primarily liable.

Plaintiffs allege that they did not actually receive the vehicles described in the contracts, but were instead included in the sales transactions solely as co-signers for their friends. Plaintiffs also allege that they have not had the vehicles in their physical possession at any time.

---

[1]We note that section 18 has recently been amended once again. Pub. Act 89—650, eff. January 1, 1997 (amending 815 ILCS 375/18). Under the new version of the statute, any person who signs a motor vehicle retail installment contract and is listed on the certificate of title issued for the vehicle is primarily liable for the debt. Defendant contends that this amendment demonstrates that all persons listed on the vehicle's title are primarily liable under the version of the statute at issue as well. We believe the amendment compels precisely the opposite conclusion. If defendant's contention were correct, there would have been no need to amend the statute.

Under these alleged facts, plaintiffs may not be held primarily liable under the contracts. In addition, we note that plaintiffs allege that they did not sign the statutorily mandated form explaining the obligation of a guarantor. Given this alleged fact, plaintiffs also may not be held secondarily liable. 815 ILCS 375/18 (West 1992).

Defendant contends in the alternative that if primary liability under section 18 is predicated solely on actual receipt of the vehicle as evidenced by physical possession rather than by legal ownership, then the statute is unconstitutionally vague under the due process clause of the United States Constitution (U.S. Const., amend. XIV). We find this contention to be without merit. It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity if it can reasonably be done. *People v. Bales,* 108 Ill. 2d 182, 188 (1985). The determination of whether a statute is void for vagueness must be made in the factual context of each case. *Bales,* 108 Ill. 2d at 189. Under the alleged facts, defendant was clearly on notice that plaintiffs would not actually receive the vehicles by taking physical possession of them. The statute is therefore not unconstitutionally vague.

We hold that the circuit court erred in finding plaintiffs liable under the contracts.

## II. Fraud and Deceptive Practices

Plaintiffs allege that defendant violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1992)) and the Sales Finance Agency Act (205 ILCS 660/16 (West 1992)) by attempting to create and enforce liability against them under the contracts when such liability was precluded by section 18 of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/18 (West 1992)). Defendant responds that its actions were based on its belief that plaintiffs could

be held liable under section 18 if they signed as buyers and placed their names on the vehicles' titles.

The Consumer Fraud and Deceptive Business Practices Act prohibits "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2 (West 1992). The Sales Finance Agency Act (205 ILCS 660/1 *et seq.* (West 1992)) prohibits, *inter alia*, conduct by a sales finance agency that is deceptive, fraudulent, or committed in willful violation of the Motor Vehicle Retail Installment Sales Act or with actual knowledge that the Motor Vehicle Retail Installment Sales Act is being violated. 205 ILCS 660/ 8.7, 8.9, 8.3, 8.5 (West 1992).

An examination of the pleadings filed in this action reveals that plaintiffs have failed to allege facts sufficient to state a claim against defendant under either the Consumer Fraud and Deceptive Business Practices Act or the Sales Finance Agency Act. Plaintiffs allege that defendant directed the auto dealerships to have plaintiffs sign the contracts as buyers and place plaintiffs' names on the vehicles' titles. As discussed above, this alleged conduct by defendant was entirely ineffective to obligate plaintiffs under the contracts. The futility of defendant's conduct does not, however, render that conduct fraudulent.

Defendant's alleged misrepresentation that plaintiffs were primarily liable under the contracts was based upon an erroneous interpretation of section 18 of the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/18 (West 1992)). The appellate court in *Magna Bank v. Comer*, 274 Ill. App. 3d 788 (1992), arrived at this same erroneous interpretation when called upon to construe the statute. Given this uncertainty about the

applicable law, the pleadings here fail to adequately allege that defendant employed any deception, fraud, or misrepresentation, or engaged in the concealment, suppression, or omission of a material fact, since plaintiffs' immunity from liability was an unsettled question of law.

Finally, plaintiffs have likewise failed to state a claim under the Sales Finance Agency Act by alleging that defendant willfully or with actual knowledge violated section 18 of the Motor Vehicle Retail Installment Sales Act because, under the state of the law at the time, it was impossible for defendant to have had actual knowledge that plaintiffs could not be held liable under the contracts. The trial court thus did not err in dismissing plaintiffs' claims for failing to allege fraud with specificity.

## CONCLUSION

For the foregoing reasons, we reverse in part and affirm in part the judgments of the appellate and circuit courts, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*