(Nos. 82412, 82512 cons.—

STEPHEN STERN *et al.*, Appellants and Cross-Appellees, v. NORWEST MORTGAGE, INC., Appellee and Cross-Appellant.

*Opinion filed October 23, 1997.—Rehearing denied December 3, 1997.*

HARRISON, J., concurring in part and dissenting in part.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner and Rick D. Young, of Edelman & Combs, of Chicago, for appellants and cross-appellees.

Peter C. Woodford and Christopher E. Paetsch, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee and cross-appellant.

JUSTICE MILLER delivered the opinion of the court:

Stephen Stern and his wife, Catherine Harth (plaintiffs), filed a class action in the circuit court of Cook County against Norwest Mortgage, Inc. (defendant). Plaintiffs claimed that defendant violated the Mortgage Escrow Account Act (Escrow Act) (765 ILCS 910/1 *et seq.* (West 1992)) and the Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/2 (West 1992)). The circuit court granted defendant's section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1992)), finding that the Escrow Act did not prevent defendant from charging an "escrow waiver fee." On appeal, the appellate court reversed and remanded as to defendant's right to impose an escrow waiver fee. 284 Ill. App. 3d 506, 510-12. The panel, however, affirmed as to plaintiffs' failure to state a cause of action under the Fraud Act. 284 Ill. App. 3d at 512-13. Both parties filed petitions for leave to appeal. We granted leave to appeal on both petitions (155 Ill. 2d R. 315), consolidated the cases and now affirm the decision of the appellate court.

## I. BACKGROUND

In July 1992, plaintiffs obtained a mortgage loan from defendant in order to purchase a house in Chicago. Under the Escrow Act, plaintiffs had the option of pledging an interest-bearing time deposit with the mortgage lender in lieu of the lender's establishing an escrow account in order to cover the payment of anticipated taxes.

Defendant informed plaintiffs that they would be assessed an "escrow waiver fee" equal to 0.25% of the principal amount of the loan if they chose to pledge an interest bearing time deposit. This amount equalled $492.50. Plaintiffs exercised this option and pledged a certificate of deposit with defendant because it was less costly than maintaining an escrow account.

In June 1993, plaintiffs brought a class action against defendant alleging that defendant violated the Escrow Act (765 ILCS 910/1 *et seq.* (West 1992)) and the Fraud Act (815 ILCS 505/2 (West 1992)). The Escrow Act provides in relevant part: "In lieu of the mortgage lender establishing an escrow account or an escrow-like arrangement, a borrower may pledge an interest bearing time deposit with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes." 765 ILCS 910/6 (West 1992). Plaintiffs claimed that defendant's practice of charging an escrow waiver fee when a borrower elected to pledge an interest-bearing time deposit violated section 6 of the Escrow Act. Further, plaintiffs claimed defendant misrepresented the provisions of the Escrow Act in violation of the Fraud Act (805 ILCS 505/2 (West 1992)).

Claiming that plaintiffs failed to state a claim upon which relief could be granted, defendant filed a section 2—615 motion to dismiss. On April 6, 1995, the trial court granted defendant's motion to dismiss. Plaintiffs appealed.

On appeal, the appellate court affirmed in part and reversed and remanded in part. 284 Ill. App. 3d at 513. First, the court reversed the trial court by finding that charging a fee for the waiver of an escrow account is contrary to the plain language and purpose of the Escrow Act. 284 Ill. App. 3d at 510. The court also rejected defendant's arguments that the Escrow Act, as construed by the plaintiffs, was preempted by federal

law and unconstitutionally vague. 284 Ill. App. 3d at 510-12. Second, the appellate court affirmed the trial court's decision that the plaintiffs failed to state a cause of action under the Fraud Act. 284 Ill. App. 3d at 512-13.

## II. ANALYSIS

We begin our analysis with the Escrow Act. In construing the Escrow Act, we must ascertain and give effect to the intent of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995). When possible, the intention of the legislature should be determined from the language of the statute. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). Besides examining the language of an act, a court should look to the evil that the legislature sought to remedy or the object it sought to attain in enacting the legislation. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989). In the present case, we must determine whether the Escrow Act, in light of the purpose for which the legislature passed the Act, prohibits the imposition of an escrow waiver fee when a borrower elects to pledge an interest-bearing time deposit in lieu of establishing an escrow account for the payment of anticipated taxes.

As stated above, section 6 states: "In lieu of the mortgage lender establishing an escrow account or an escrow-like arrangement, a borrower may pledge an interest-bearing time deposit with the mortgage lender in an amount sufficient to secure the payment of anticipated taxes." 765 ILCS 910/6 (West 1992). The plain language of section 6 clearly provides a borrower with a right to choose between two options. The borrower may elect to pledge an interest-bearing time deposit to cover payment of future anticipated taxes. If the borrower does not elect this option, the mortgage lender can establish an escrow account to cover these payments. There is no provision in section 6 of the

Escrow Act which allows for substitution of a third option or conditions to be placed on whichever of the two options the borrower elects.

Before passage of the Escrow Act, most standard mortgage loans required the borrower to make monthly deposits into an escrow account to cover future taxes and other anticipated expenditures. Lenders were under no obligation to pay the borrower interest on the funds in the escrow account; thus, lenders received the benefit of the funds deposited by the borrower in the escrow account. In passing the Escrow Act, the legislature sought to give borrowers the benefit of their early payments of taxes by allowing them to pledge interest-bearing time deposits as opposed to having lenders establish escrow accounts.

The legislature clearly wanted the borrower to have the right to pledge an interest-bearing time deposit instead of establishing an escrow account. If a mortgage lender is allowed to charge an escrow waiver fee when a borrower exercises that right, the lender would be able to effectively take away a right given the borrower by the legislature. We do not believe that the legislature would have provided a benefit to borrowers only to give the lender a means to reduce or eliminate this benefit. It is evident that the legislature intended for borrowers electing to pledge an interest-bearing time deposit to retain the proceeds from that deposit. It is also evident that the legislature intended to provide only two options to secure the payment of anticipated taxes. We believe that a lender cannot charge an escrow waiver fee when the borrower pledges an interest-bearing time deposit because such a fee is inconsistent with the language of the statute and the legislative intent to provide a benefit to the borrower.

Having determined that the Escrow. Act does not allow defendant to charge an escrow waiver fee should

plaintiff elect to pledge an interest-bearing time deposit, we must next determine whether that portion of section 6 prohibiting escrow waiver fees is preempted by federal law.

The supremacy clause of the United States Constitution states that "the Laws of the United States *** shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Congress' purpose " 'is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992), quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1190 (1978). "Congress' intent to preempt State law may be manifested 'by express provision, by implication, or by a conflict between federal and state law.' " *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996), quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 654, 131 L. Ed. 2d 695, 704, 115 S. Ct. 1671, 1676 (1995).

When reading the Escrow Act to include a prohibition against escrow waiver fees, defendant claims that the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA) (12 U.S.C. § 1735f—7a (1994)) preempts the Escrow Act. DIDMCA states in relevant part: "The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance" made after March 31, 1980, and secured by a first lien on residential real property. 12 U.S.C. § 1735f—7a(1) (1994).

We must initially determine whether the Escrow Act's prohibition of an escrow waiver fee falls under the

purview of DIDMCA. In the present case, defendant charged plaintiffs a "one-time service fee" equal to 0.25% of the total principal amount of the loan upon plaintiffs' election to pledge an interest-bearing time deposit in lieu of defendant establishing an escrow account. If the section 6 prohibition of this fee expressly limits the rate or amount of interest, discount points, finance charges, or other charges of the mortgage loan, federal law may preempt the section.

Under regulations promulgated pursuant to section 501 of DIDMCA, the Federal Home Loan Bank Board defined the contours of the federal regulatory scheme: "Nothing in this section preempts limitation in state laws on prepayment charges, attorneys fees, late charges or other provisions designed to protect borrowers." 12 C.F.R. § 590.3(c) (1997). As stated above, the legislature passed the Escrow Act with the intent to provide borrowers with the monetary benefit mortgage lenders had traditionally received from escrow accounts. This measure was clearly designed to protect borrowers; thus, DIDMCA does not preempt the Escrow Act.

Our decision is supported by an examination of the purpose behind passage of DIDMCA. In the late 1970s, interest rates increased above the level lenders could legally charge under state usury laws. To spur the home mortgage market and encourage home sales, Congress passed DIDMCA and eliminated interest rate ceilings on first mortgages. Congress' aim in enacting DIDMCA had "particular emphasis on state usury laws which restrict interest rates to *below-market* levels and result in *artificial disruptions* in the supply of home-loan mortgage funds." (Emphasis in original.) *Grunbeck v. Dime Savings Bank of New York, FSB*, 74 F.3d 331, 339 (1st Cir. 1996). It is clear that DIDMCA is not meant to preempt situations like the present case. Defendant cannot show that the prohibition of escrow waiver fees falls under the purview of DIDMCA.

Defendant additionally argues that if section 6 of the Escrow Act is read to prohibit escrow waiver fees, the Escrow Act is unconstitutionally vague. A statute violates the due process clauses of the United States Constitution or the Illinois Constitution on the basis of vagueness "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." *People v. Burpo*, 164 Ill. 2d 261, 265-66 (1995).

Here, our decision is based on the language of section 6 and the purpose behind the passage of the Escrow Act. That defendant may have reasonably believed that the imposition of escrow waiver fees was not prohibited by the Escrow Act is not sufficient to render the statute unconstitutional for vagueness. The fact that a statute might be susceptible of misapplication does not necessarily make it unconstitutional. *Stein v. Howlett*, 52 Ill. 2d 570, 580 (1972). We do not find section 6 of the Escrow Act to be so indefinite and uncertain that we cannot determine the intention of the legislature. We reject defendant's argument that section 6 of the Escrow Act is void for vagueness.

Finally, defendant argues that the prohibition of escrow waiver fees by the appellate court is a legislative act that violates the separation of powers doctrine by reading a prohibition into the statute. It is the function of the judiciary to determine what the law is and to apply statutes to cases. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 204 (1982); *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978). Here, we are merely construing section 6 of the Escrow Act and applying it to the present case—there is no violation of the separation of powers doctrine.

Having determined that charging an escrow waiver fee violates section 6 of the Escrow Act, we must next determine whether defendant violated the Fraud Act by

charging this fee to plaintiffs. Section 2 of the Fraud Act states:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, \*\*\* are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

In the present case, we find that defendant's action of charging plaintiffs an escrow waiver fee when plaintiffs elected to pledge an interest-bearing time deposit was not intended to deceive or defraud plaintiffs or be unfair to plaintiffs. Further, defendant did not conceal, suppress, or omit any material fact with the intent that plaintiffs would rely on such action. Defendant, in this case, merely made an honest mistake concerning the interpretation of a statute that had yet to be construed. While we have found that defendant's action of charging an escrow waiver fee was prohibited under the Escrow Act, we do not believe that the defendant's actions in this case violated the Fraud Act. See *Lee v. Nationwide Cassel, L.P.*, 174 Ill. 2d 540, 550-51 (1996).

## III. CONCLUSION

For the foregoing reasons, we find that section 6 of the Escrow Act prohibits a lender from charging an escrow waiver fee when the borrower elects to pledge an interest-bearing time deposit in lieu of the lender's establishing an escrow account to cover payment of anticipated taxes. Further, prohibiting such a fee is not federally preempted by DIDMCA and is not unconstitutionally vague or a violation of the separation of powers doctrine. Additionally, we find that plaintiffs have failed to state a cause of action under the Fraud Act. We

therefore affirm the appellate court's decision that defendant violated the Escrow Act and affirm the decision that plaintiffs have failed to state a cause of action under the Fraud Act.

*Affirmed.*

JUSTICE HARRISON, concurring in part and dissenting in part:

Contrary to the majority, I believe that plaintiffs stated a cause of action under section 2 of the Consumer Fraud Act (815 ILCS 505/2 (West 1992)) as well as the Escrow Act (765 ILCS 910/1 *et seq.* (West 1992)). In affirming the dismissal of plaintiffs' consumer fraud claim, my colleagues assert that defendants did not intend to deceive plaintiffs, but merely made an honest mistake. The majority makes these assertions as if the facts had been fully litigated and are now beyond question. What is puzzling about this approach is that the case has not yet gone to trial. We are still at the pleading stage, and the matter is before us in the context of a motion to dismiss under section 2—615 of the Code of Civil Procedure (725 ILCS 5/2—615 (West 1994)).

A section 2—615 motion to dismiss attacks only the legal sufficiency of the complaint. *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 475 (1991). When the legal sufficiency of a complaint is challenged by a section 2—615 motion, all well-pleaded facts in the complaint are taken as true, and the reviewing court must determine whether the allegations, when construed in the light most favorable to plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996). A complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996).

To state a cause of action under section 2 of the Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick*, 174 Ill. 2d at 501. There is no basis for holding that plaintiffs' complaint fails to meet these requirements.

Under the Consumer Fraud Act, "unfair or deceptive acts or practices" are defined to include the use or employment of any

"misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ***." 815 ILCS 505/2 (West 1992).

In the matter before us, there is no dispute that escrow requirements were an important part of plaintiffs' mortgage transactions with Norwest Mortgage and were therefore material. Plaintiffs clearly allege that the company misrepresented or concealed, suppressed or omitted those requirements by failing to give notice to plaintiffs, as required by law, that they could avoid escrow without payment of a fee and by supplying plaintiffs with information about escrow accounts that was inconsistent with the law. The company obviously intended consumers such as plaintiffs to rely on its misrepresentations, suppressions, and omissions, and the consumers did so rely. According to the complaint, consumers paid the fee the company demanded even though the fee was illegal and the company had no right to collect it.

To suggest that there was no deception or unfairness under these circumstances, as the majority does, requires a view of honesty and justice I do not share and cannot comprehend. If plaintiffs' allegations are true, as we must assume them to be, what the company did here was to extract money from consumers by violat-

ing the law. Under any sensible construction, such conduct falls squarely within the ambit of the Consumer Fraud Act.

My colleagues attempt to justify the company's behavior on the grounds that the company did not intend to deceive plaintiffs but "merely made an honest mistake." 179 Ill. 2d at 169. Unlike *Lee v. Nationwide Cassel, L.P.*, 174 Ill. 2d 540 (1996), however, no unsettled principles of law were involved here and no legitimate claim could be made that the defendant's conduct was lawful. Under the facts alleged in this case, defendant's conduct was clearly improper and illegal.

In any case, there is no "honest mistake" defense to a claim brought under the Consumer Fraud Act. Although the point has never been squarely addressed by our court, the appellate court has consistently and repeatedly held that even innocent or negligent misrepresentations are actionable. See, *e.g.*, *Sohaey v. Van Cura*, 240 Ill. App. 3d 266, 291 (1992), *aff'd & remanded*, 158 Ill. 2d 375 (1994); *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 856 (1995); *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1065 (1995); *Warren v. LeMay*, 142 Ill. App. 3d 550, 566 (1986). Under the Act, the good or bad faith of the defendant is irrelevant. *Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 453 (1990). Accordingly, an intent to deceive is not necessary to a finding of unfair or deceptive conduct within the meaning of the statute. *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 578-79 (1985); *Warren*, 142 Ill. App. 3d at 566. The majority has no basis in the law for holding otherwise.

For the foregoing reasons, I would allow plaintiffs to proceed with their claim under the Consumer Fraud Act. In all other respects I concur.